Filed 2/15/24  P. v. Cortez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B327055 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA503841) |
| v. | |
| DAVID CORTEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura Priver, Judge.  Affirmed.

Andrea Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Assistant Attorney General, Susan Pithey, Senior Assistant Attorney General, Jason Tran and Kristen Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant David Cortez of assault with a deadly weapon and arson. On appeal, Cortez contends there was insufficient evidence that he did not act in self-defense or defense of another. Cortez also argues the trial court erroneously denied his motion for a judgment of acquittal on the arson count. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2020, Oscar Garcia and Annie Wrate set out to retrieve some tools from Lupe Cortez.[1] Garcia told Wrate that Lupe lived in an R.V., and they drove to its location in Garcia's vehicle. Garcia approached the door of the R.V. Wrate stayed back 10 or 15 feet. Wrate saw Garcia and another man begin arguing near the door of the R.V. She then saw the man come out of the R.V. and stab Garcia twice. Wrate moved further away from the R.V. and briefly turned her back on the interaction. Lupe emerged and attempted to break up the fight. Garcia eventually managed to get away. Wrate drove him to the hospital. Wrate and Garcia were surprised and shocked at what had happened. Wrate did not see Garcia with a knife or any other weapon before, during, or after the incident.

Los Angeles Police Department (LAPD) Officer Angelica Gutierrez interviewed Garcia later that day. Garcia told Gutierrez that Lupe's brother stabbed him. Garcia had not met or seen the brother previously, but he provided a physical description. Garcia also described the location of the incident.

---

[1] For the sake of clarity we refer to Lupe by first name only. No disrespect is intended.

Garcia suffered a collapsed lung and was hospitalized for four days.

LAPD Detective George Wilson went to the location Garcia described the day after the stabbing. Cortez was at the site. Another detective took photographs of Cortez, which showed injuries to his face, several fingers, and both palms. Lupe was also there, inside an R.V.

A few days later, LAPD officers arrested Cortez. Wilson and officer Kim Hanna conducted a recorded interview, during which Cortez provided his account of the stabbing. Cortez told the officers that he was at his sister's R.V. on the day of the incident. Garcia and Wrate appeared to be "aggressive" and "sneaky" when they approached the R.V. Cortez was afraid they were there to attack Lupe. He also believed Garcia was hiding something behind his back or thigh. Cortez felt the situation was becoming "very tense," so he went inside the R.V. and grabbed a knife. When he returned to the door, Garcia was holding a large silver knife. The knife's blade was "thick" and "longer than a piece of paper." Cortez came out of the R.V. and "jabbed" Garcia twice "to push him back." During the fight that ensued, Cortez grabbed the blade of Garcia's knife. Cortez heard Garcia say, " 'you're going to die, you're going to die.' " Cortez eventually dropped his knife and the struggle stopped.

Sometime between the stabbing and Cortez's arrest, the R.V. was burned to the ground. Wilson and Hanna asked Cortez about the fire during the interview. Cortez told them he set fire to the R.V. because he did not want Lupe to live there anymore. After the interview, Wilson returned to the R.V., where he found Lupe sorting through its burned debris.

3

During the trial, after the prosecution rested its case, Cortez moved for a judgment of acquittal on the arson charge under Penal Code section 1118.1.[2]  He argued there was insufficient evidence that the R.V. was inhabited at the time it was burned.  The trial court denied the motion.

A jury convicted Cortez of arson of an inhabited structure or property (§ 451, subd. (b)) and assault with a deadly weapon (§ 245, subd. (a)(1)).  The trial court imposed an aggregate sentence of 12 years in state prison.  Cortez timely appealed.

## DISCUSSION

Cortez contends there was insufficient evidence to support either conviction.  We disagree.

## I.     Standard of Review

To determine whether the evidence is sufficient to sustain a criminal conviction, "we review the entire record in the light most favorable to the judgment of the trial court.  We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt." (*People v. Vargas* (2020) 9 Cal.5th 793, 820.)  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, and we accept logical inferences the jury might have drawn from circumstantial evidence.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1103 (*Baker*).)  Reversal is not warranted unless it appears " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' [Citation.]" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

---

[2]     All undesignated statutory references are to the Penal Code.

4

## II. Substantial Evidence Supported the Conviction for Assault with a Deadly Weapon

Cortez argues the evidence was insufficient to allow the jury to conclude, beyond a reasonable doubt, that he did not act in lawful defense of himself or Lupe when he stabbed Garcia.

" 'To justify an act of self-defense for [an assault charge under section 245], the defendant must have an honest *and reasonable* belief that bodily injury is about to be inflicted on him [or another].  [Citation.]'  [Citation.]"  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064 (*Minifie*).)  " ' "[T]he peril must appear to the defendant as immediate and present and not prospective or even in the near future.  *An imminent peril is one that*, *from appearances*, *must be instantly dealt with*." ' "  (*In re Christian S.* (1994) 7 Cal.4th 768, 783 (*Christian S.*).)  In addition, " 'any right of self-defense is limited to the use of such force as is reasonable under the circumstances.  [Citation.]'  [Citations.]"  (*Minifie*, at p. 1065.)  "It is the prosecution's burden to prove beyond a reasonable doubt that the defendant did not act in lawful self-defense.  [Citation.]  However, as stated above, our review is for substantial evidence."  (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 212 (*Cruz-Partida*).)

The evidence at trial amply supported the jury's rejection of Cortez's claim that he acted in defense of Lupe.  The undisputed evidence reflects that Lupe was not present when the altercation began.  According to Wrate, Lupe appeared only after Cortez had already stabbed Garcia.  In Cortez's account, he said Lupe was not at the R.V. when Garcia arrived.  He did not mention Lupe again in describing how the incident occurred.  The jury could reasonably conclude that Cortez did not stab Garcia because he honestly and reasonably believed Garcia was about to inflict

bodily injury on Lupe, since she was not even present. (*Minifie*, *supra*, 13 Cal.4th at p. 1065.)

Substantial evidence also supported the jury's rejection of Cortez's self-defense claim. While Cortez offered his description of the incident, Wrate's account differed. Wrate testified that she heard "a little bit of arguing" in voices that were "just barely" raised, then a man, who Garcia later identified as Lupe's brother, exited the R.V. and started stabbing Garcia. Wrate had not seen Garcia with a knife at any point that day. As she drove Garcia to the hospital, they were both shocked and she was surprised at "how everything went down." Thus, accepting all logical inferences that could be drawn from the testimony, Wrate's account was that in the midst of a verbal argument, Cortez stepped out of the R.V. and began stabbing Garcia, who did not have a weapon of any kind. This disproved any claim that Cortez had a reasonable belief that Garcia was about to inflict bodily injury on him, or that his resistance in the form of stabbing Garcia was reasonable under the circumstances. The jury was entitled to credit Wrate's account.

Moreover, there was other substantial evidence that even if Cortez believed Garcia posed an imminent threat, that belief was not reasonable. Cortez told officers that Garcia and Wrate were aggressive, and that the situation at the R.V. was tense. He believed Garcia was hiding something behind his back or thigh and later saw that Garcia was holding a large knife. Although this evidence, if credited, would support that Cortez perceived Garcia as a threat, nothing in the record indicates the threat was so immediate that Cortez needed to respond to it " ' "*instantly*." ' " (*Christian S.*, *supra*, 7 Cal.4th at p. 783.) There was no evidence that Garcia ever tried to enter the R.V., lunged at or attacked

6

Cortez, or even wielded the knife in a menacing manner before Cortez began stabbing him. Cortez told officers that Garcia said, " 'you're going to die,' " but that was only after the stabbing. He did not describe any other verbal threats. Even if a jury believed Cortez's statement that Garcia had a knife, the evidence also supported the finding that Cortez did not honestly or reasonably perceive this as an imminent threat.

Cortez contends that the reasonableness of his fear of imminent harm had to be evaluated from his particular perspective. He cites *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732, in which an expert opined that the chronically homeless suffer unusually high rates of violence and may therefore "experience a heightened fear of aggression . . . ." (*Id*. at p. 751.) The court found this expert opinion relevant because it "would assist a jury in weighing the reasonableness of defendant's belief of imminent harm . . . ." (*Ibid*.) Yet, as Cortez concedes, there was no evidence that he was homeless, or, as he suggests, that he was a person "more experienced with violence, and thus more quick to recognize a threatening situation." The jury was not free to speculate about Cortez's background or life experiences, nor are we. Based on the evidence as a whole as presented at trial, the jury could fairly determine that Cortez did not honestly and reasonably believe Garcia posed an imminent threat. (*Minifie*, *supra*, 13 Cal.4th at p. 1064; *Christian S.*, *supra*, 7 Cal.4th at p. 783.)

Similarly, there was substantial evidence that Cortez used unreasonable force under the circumstances. (*Minifie, supra*, 13 Cal.4th at p. 1065.) Immediately before the stabbing, Cortez stood at the entrance of the R.V. and Garcia stood outside. As noted above, there was no evidence Garcia took any steps to enter

the R.V.  According to Cortez, before he stabbed Garcia, he left the entrance of the R.V. and went inside.  Garcia did not pursue him.  Cortez then retrieved a knife, returned to the doorway, and stepped outside to stab Garcia.  There was no evidence the stabbing was preceded by any physical action on Garcia's part.  Cortez told officers that he "jabbed" Garcia twice "to push him back."  Yet, the attack was severe enough that Garcia suffered a collapsed lung and spent four days recovering in the hospital.  A reasonable jury could determine Cortez used unreasonable force in response to any threat Garcia posed.

Cortez contends his actions and injuries were "consistent with a person acting defensively, not offensively."  But even defensive injuries would not establish the stabbing was lawful self-defense.  It was undisputed that there was a scuffle between Garcia and Cortez and the two men struggled.  However, both Cortez and Wrate appeared to indicate that the fight took place after Cortez had already stabbed Garcia.  In any event, to the extent the evidence was in conflict, the jury was entitled to weigh the evidence and make credibility determinations.  " ' "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." [Citation.]' [Citation.]" (*Cruz-Partida*, *supra*, 79 Cal.App.5th at p. 206.)

## III.   The Trial Court Did Not Err in Denying Cortez's Motion for Judgment of Acquittal on the Arson Charge

Cortez was charged with and convicted of "arson of an inhabited structure or property" under section 451,

subdivision (b). A structure is "inhabited" if it was "being used for dwelling purposes[,] whether occupied or not," at the time the fire was set. (§ 450, subd. (d); *People v. Vang* (2016) 1 Cal.App.5th 377, 386.) Cortez contends the trial court erred in denying his motion for judgment of acquittal of the arson charge because there was insufficient evidence that Lupe inhabited the R.V. when it was burned. We find no error.

Section 1118.1 allows a defendant to move for a judgment of acquittal after the close of evidence on either side and before the case is submitted to the jury. It requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. (§ 1118.1.) This mechanism is "used to cull the ' " 'few instances in which the prosecution fails to make even a prima facie case.' " ' [Citation.]" (*People v. Wilson* (2021) 11 Cal.5th 259, 301 (*Wilson*).) " 'The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.]" (*People v. Stevens* (2007) 41 Cal.4th 182, 200.) "The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review." (*Ibid.*)

Before Cortez moved for a judgment of acquittal, the prosecution presented substantial evidence that Lupe lived in the R.V. when it was burned. Cortez told LAPD officers that he was at his sister's R.V. on the day of the stabbing. He also said that he set fire to the R.V. because he did not want Lupe to "live there

anymore." In addition, Wrate testified that Garcia told her Lupe lived in the R.V. Wrate saw Lupe near the R.V. during the fight. Finally, Wilson found Lupe inside the R.V. the day after the stabbing. He later discovered Lupe at the site of the R.V., sorting through its charred remains. This was sufficient for a jury to find that the R.V. was inhabited.

Cortez argues that the officers' testimony is "second-hand" evidence of what he said during the interview and there was otherwise "very little evidence" that Lupe lived in the R.V. But we must " ' "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' [Citation.]" (*Baker*, *supra*, 10 Cal.5th at p. 1103.) "We are not free to reform the verdict simply because another theory is plausible." (*Wilson*, *supra*, 11 Cal.5th at p. 302.) The evidence was sufficient to sustain a conviction and the trial court did not err in denying Cortez's motion under section 1118.1.

**DISPOSITION**

The trial court judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.

11